UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| TUONG NGUYEN and SMARTER NUTRITION, INC. | CASE NO. 8:21-CV-00832-DOC-ADS |
|---|---|
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| SMARTERVITAMINS CORP., | |
| Defendant. | |

## I. INTRODUCTION

This action is a trademark dispute between two competing vitamin and supplement companies. Plaintiffs, Smarternutrition, Inc. and Tuong Nguyen ("Plaintiffs" or "SNI") own the federally registered trademark for "Smarternutrition," and sell a curcumin supplement under the "Smartercurcumin" mark. Defendant Smartervitamins Corp. ("Defendant" or "SVC") makes and sells nutritional supplements through online storefronts under the mark "Smartervitamins." Because the parties' branding—use of the "Smarter" prefix in the nutritional supplement markets—is so similar, each party accuses the other of trademark infringement and other unfair business practices. For the reasons provided below, the Court finds that neither party has met their burden of showing that their marks are valid and protectable. Because possession of a valid and protectable trademark is an essential element of all of Plaintiffs' claims and all of Defendant's counterclaims, all of Plaintiffs' claims and all of Defendant's counterclaims fail.

The Court held a bench trial in this matter on November 30, 2022, and December 7, 19-21, 2022. The Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

## II. FINDINGS OF FACT

### A. SNI and the "Smarternutrition" mark

1. Tuong Nguyen is the co-founder and majority owner of SNI. SNI sells nutritional supplements and vitamins via the internet. SNI was incorporated on April 11, 2017. Ex. 24.[1]

2. Plaintiffs' most popular supplement is a curcumin supplement whose principal ingredient is curcumin, a turmeric root extract. 12-20-22 (Vol. 1) Trial Tr. 38:12-20.

---

[1] All citations to "Ex." refer to trial exhibits.

2

3. Beginning in late 2016, Nguyen began manufacturing and bottling curcumin supplements with "Smarternutrition" labels:
   - On November 10, 2016, Nguyen placed an order for 8,333 bottles of a curcumin supplement with the "Smarternutrition" label on them, which had a retail value of approximately $332,000. Ex. 38-1.
   - On December 12, 2016, Nguyen placed a second order for 2,154 bottles of a curcumin supplement with the "Smarternutrition" label, which had a retail value of $82,000. Ex. 38-2.
   - On January 20, 2017, Nguyen placed a third order for an additional 8,333 bottles of a curcumin supplement with the "Smarternutrition" label, which had a retail value of $332,000. Ex. 38-3.

4. In January 2017, Plaintiffs designed the label "with the circle dot and the words 'Smarter Nutrition,'" as shown on SNI's Facebook page, Ex. 42-1, and provided that label to its manufacturer for placing on the ordered bottles of curcumin before delivery to SNI. 11-30-22 Trial Tr. at 102: 9-103:10; 12-7-22 Trial Tr. 16:24-8:3.

5. Elaine Phan, SNI's CFO, testified that "about, like 50 to 100 bottle[s]" of Smarternutrition curcumin bottles were shipped to Nutrivita, a brick-and-mortar store, and displayed there in February 2017. 11-30-22 Trial Tr. at 107:19 – 109:11. Plaintiffs also began shipping bottles directly to consumers on February 9, 2017. *Id.*

6. Because Plaintiffs were both selling "Smarternutrition" branded products directly to consumers and displaying their branded products at Nutrivita by February 9, 2017, the Court **FINDS** that Plaintiffs began using the "Smarternutrition" mark in commerce on February 9, 2017.[2]

7. While Plaintiffs began using their mark in commerce on February 9, 2017, they did not begin their intense advertising efforts until the second half of 2017. 11-30-22

---

[2] "Use in commerce" requires both "(1) an element of actual use, and (2) an element of display." *Chance v. Pac-Tel Teltrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001).

1 Trial Tr. at 109:14 –23 (testifying that Plaintiffs initiated an "aggressive launch of their product in the third quarter of 2017); *see also* Ex. 40-2.

8. Plaintiffs created a Facebook page for SNI on April 7, 2017, and an Instagram page in September 2017. Exs. 42-1, 44-3. In the second half of 2017, Plaintiffs spent around $500,000 in advertising. *See* Ex. 39; 11-30-22 Trial Tr. at 114:15-23. In June 2017 alone, Plaintiffs reached 248,270 consumers on Facebook, and over 9-million consumers by the end of 2017. Ex. 45. Plaintiffs made their first Instagram post on September 14, 2017, which featured a picture of a "Smarternutrition" bottle and directed viewers where to purchase the product. Ex. 44-3.

9. Plaintiffs' sales also begin increasing in the second half of 2017. Plaintiffs began selling Smarternutrition supplements on Facebook in July 2017, and sales steadily increased to over $300,000 per month in November and December 2017. Ex. 47; 12-7-22 Trial Tr. 15:5-23. Plaintiffs began selling Smarternutrition-labeled products on Amazon in September 2017. Ex. 46. In 2017, SNI sold $1,252,742 of "Smarternutrition" products.

10. Plaintiffs received a federal trademark registration for the "Smarternutrition" word mark on August 14, 2018, in the Class 035 for distributorships in the field of dietary and nutritional supplements, vitamins, herbal, and mineral supplements. Ex. 117. Plaintiffs received a federal trademark registration for its "Smarternutrition" name and logo in Class 005 on July 17, 2018. Ex. 119. Nguyen received a federal trademark registration for its "Smarternutrition" mark in Class 005 on August 14, 2018. Ex. 118.

**B. SNI and the "Smartercurcumin" mark**

11. In September 2017, Plaintiffs rebranded their curcumin supplement as "Smartercurcumin." Exs. 42, 44. Plaintiffs created a new label featuring that mark, advertised the mark on social media, and created a new webpage for "Smartercurcumin." Trial Ex. 44 at 44-3; 11-30-22 Trial Tr. 139:20-140:3; Trial Ex.

42 at 42-4; Trial Ex. 6 at 6-24

12. From 2017-2019, 90% of SNI's sales were curcumin supplements sold under the "Smartercurcumin" label, and in 2020, 80% of SNI's sales were curcumin sold under the "Smartercurcumin" label. 12-20-22 (Vol. 1) Trial Tr. 38:12-20. Between September 2017 and the end of that year, Plaintiff sold more than $1 million in "Smartercurcumin" labeled products. *See* Ex. 39-1.

13. Nguyen filed a trademark application for the "Smartercurcumin" mark in Classes 005 and 035 on April 18, 2019. Ex. 6. Defendant submitted an opposition to the application based on the likelihood of confusion between "Smartercurcumin" and "Smartervitamins." Ex. 37. Plaintiffs have yet to receive federal trademark registration for "Smartercurcumin."

**C. SVC and the "Smartervitamins" mark**

14. Smarter Vitamins was incorporated on July 25, 2016. Ex. 56. Randy Jabero is the founder and chief executive officer of Smarter Vitamins and its sole employee.

15. SVC sells vitamins and dietary supplements through e-commerce marketplaces under the "Smartervitamins" brand-name. Ex. 29. SVC sells several different types of supplements, *see* 12/21/2022 Vol. II, Trial Tr. 42:25 – 44:2, but SVC's first and most popular type of supplement is a caffeine supplement. 12/21/2022 Vol. II, Trial Tr. 26:23 – 27:11

16. SVC designed the logo for its brand in August or September of 2016. 12/21/2022, T.T. 51:5-8. It designed the label, which features the "Smartervitamins" mark, that it affixes to its supplement bottles before September 2016. Defendant began advertising this logo on Instagram as early as October 29, 2016. Exs. 72, 74-75.

17. Smarter Vitamins purchased the domain www.smartervitamins.com on June 29, 2016. 12/21/2022 Vol. II, Trial Tr. 50:7-11; Ex. 64. Defendant published a landing site to the www.smartervitamins.com domain in July 2016 bearing SVC's trademarks to collect e-mails for potential customers before its e-commerce website was open for business.

12/21/2022 Vol. II, Trial Tr. 50: 12-19. At that time, Smarter Vitamins was able to collect hundreds of customers' names and contact information to receive advertising and promotional samples. 12/21/2022 Vol. II, Trial Tr. 50:12-19. By September 2016, SVC started shipping out bottles of Smarter Vitamins branded vitamins and supplements to customers that had signed up on SVC's website. 12/21/2022 Vol. II, Trial Tr. 78:12-17.

18. SVC launched its commercial website in September 2016, 12/21/2022, T.T. 50:9-23; Ex. 64, and registered its first sale through its website on October 28, 2016. (R. Jabero, 12/20/2022, T.T. 161:7-9; Ex. 25. By the end of 2016, Defendant shipped out nineteen bottles of promotional Smartervitamins labeled supplements. Ex. 27, 78; 12/20/2022 Vol. II, Trial Tr. 152:13 – 154:21

19. Defendants began advertising in late 2016. SVC created its social media pages, including on platforms such as Facebook, Instagram, and Snapchat, in July 2016 and soon thereafter began posting advertisements to those accounts. 12/21/2022, Trial Tr. 55:16 – 66:11. Defendant's Facebook advertisements received more than 2,700 impressions between January 31, 2017 and February 27, 2017. Ex. 77. In 2016, Defendant also purchased Google Adwords to generate online brand awareness. Ex. 26. Defendant spent more than $800 in advertising in 2016, Ex. 36, and around $89,000 in advertising in 2017. Ex. 28.

20. Because Defendant was selling products to consumers and advertising using the "Smartervitamins" mark in October 2016, the Court **FINDS** that Defendant first used the "Smartervitamins" mark in commerce on October 28, 2016.

21. Defendant does not have a federal trademark registration for "Smartervitamins."

### III. CONCLUSIONS OF LAW
#### A. Plaintiffs' Claims Relating to its "Smarternutrition" Mark

22. Plaintiffs bring three federal Lanham Act claims relating to their "Smarternutrition" mark: (1) that Defendants use of "Smartervitamins" infringes on "Smaternutrition"

1  (15 U.S.C. § 1114), (2) that Defendant's use of "Smartervitamins" constitutes unfair competition and false designation of origin in light of Plaintiffs' use of the "Smarternutrition" mark (15 U.S.C. § 1125(a)), and (3) Defendant's use of "Smartervitamins" constitutes a false description or representation in light of Plaintiffs' "Smarternutrition" mark (15 U.S.C. § 1125(a)). Final Pretrial Conference Order (Dkt. 124) at 5-6. Defendants also bring two state law causes of action: (1) California common law trademark infringement, and (2) a California unfair business practices claim (Cal. Bus. & Prof. Code § 17200 et seq.). *Id.* In addition to monetary damages, Plaintiffs seek a declaratory judgment and injunctive relief. *Id.*

23. Each of Plaintiffs' five causes of action require that Plaintiffs' "Smarternutrition" trademark is valid and protectable. *See Brookfield Comms., Inc. v. West Coast Entmt. Corp.*, 174 F.3d 1036, 1046-47, 1046 n.8 (9th Cir. 1999) (Lanham Act claims); *Cleary v. New Corp.*, 30 F.3d 1255, 1263-64 (9th Cir. 1994) (California state law claims). For the reasons explained below, the "Smarternutrition" mark is invalid; therefore, all five of Plaintiffs' causes of action related to infringement of the "Smarternutrition" mark fail.

**1. Plaintiffs' "Smarternutrition" Trademark is Invalid.**

24. "To be valid and protectable, a mark must be distinctive." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (internal quotations omitted). "Distinctiveness measures the primary significance of the mark to the purchasing public." *Id.* (internal quotation marks and citation omitted). The more distinctive a mark, the more protection it will be afforded. "Marks are generally classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." *Id.* (citation omitted).

25. Fanciful, arbitrary, and suggestive marks "are deemed inherently distinctive and entitled to protection." *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 768 (1992). This is because they "naturally serve to identify a particular source of a product." *KP*

1 *Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). Generic marks, by contrast, "are not capable of receiving protection because they identify the product, rather than the product's source." *Id.* Descriptive marks fall in between: they are "not inherently distinctive," but may "acquire distinctiveness which will allow them to be protected." *Two Pesos*, 505 U.S. at 769. This acquired distinctiveness is called "secondary meaning." *Id.* Thus, a descriptive mark "will be protected only when secondary meaning is shown." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (1979).

26. "Trademark validity and the category to which a mark belongs" are "intensely factual issue[s]," and the plaintiff bears the burden of proof. *Zobmondo*, 602 F.33d 1108.

27. "[A] federal trademark registration of a particular mark supports the distinctiveness of that mark, because the PTO should not otherwise give it protection." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1119 (9th Cir. 1992). Although the presumption that a federally registered mark is inherently distinctive is "a strong one," courts must make an independent inquiry into the distinctiveness of a disputed mark. *See Zobmondo*, 602 F.3d at 1115; *see also* 15 U.S.C. § 1115(a) (establishing that although registration is "prima facie evidence of the validity of the registered mark," the Lanham Act does "not preclude another person from proving any legal or equitable defense or defect").

   a. **"Smarternutrition" is descriptive.**

28. A descriptive mark "is one that directly and immediately conveys some knowledge of the characteristics of a product or service." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:16 (5th ed. 2018, Westlaw). It communicates something about a product without requiring any imagination on the consumer's part. *Surfvivor Media v. Survivor Prod.*, 406 F.3d 625, 632 (9th Cir. 2005). Descriptive marks, as their name suggests, often describe or relate a characteristic of the product. *See id.*; *see also Japan Telecom, Inc. v. Japan Telecom*

1    *America, Inc.*, 287 F.3d 866, 872 (9th Cir. 2002) ("Descriptive terms describe a
2    person, a place, or an attribute of a product.") (internal quotations omitted). For
3    example, "Honey Roasted" is a descriptive mark for nuts roasted with honey.
4    *Surfvivor*, 406 F.3d at 632. "[M]erely descriptive marks need not describe the
5    essential nature of the product; it is enough that the mark describes some aspect of
6    the product." *Zobmondo*, 602 F.3d at 1034.

7 29. Laudatory marks are descriptive. *See* 5 McCarthy, *supra*, § 11:17. "Laudatory
8    marks" are marks "that describe the alleged merit of the good" and "are descriptive
9    because they simply describe the characteristics or quality of the goods in a
10   condensed form." *In re Nett Designs*, 236 F.3d 1339, 1341 (Fed. Cir. 2001).
11   Laudatory marks include terms like SPEEDY, FRIENDLY, DEPENDABLE,
12   PREFERRED, and SUPER BUY. *Rexel, Inc. v. Rexel Int'l Trading Corp.*, 540 F.
13   Supp. 2d 1154, 1165 (C.D. Cal. 2008).

14 30. The Ninth Circuit uses two tests to determine whether a mark is descriptive. The first
15   and "clearly the most used[] test is known as the 'imagination' test." *Zobmondo*, 602
16   F.3d at 1115. That test asks whether "imagination or a mental leap is required in
17   order to reach a conclusion as to the nature of the product being referenced." *Id.* The
18   second test is the "competitor test." *Id.* at 1117. This test "focuses on the extent to
19   which a mark is actually needed by competitors to identify their goods or services."
20   *Id.* The imagination and competitor tests are inversely related, meaning "[t]he more
21   imagination that is required to associate a mark with the product, the less likely
22   words used will be needed by competitors to describe their products." *Id.* (internal
23   quotations omitted).

24 31. "A suitable starting place for attempting to draw the line between a suggestive and a
25   descriptive mark is the dictionary." *Fortune Dynamic, Inc. v. Victoria's Secret Stores*
26   *Brand Mgmnt.*, 618 F.3d 1025, 1033 (9th Cir. 2010). When the mark at issue is a
27   composite mark, a court may begin its "inquiry by separately viewing the component

|   |   |   |
|---|---|---|
| 1 |  | parts of the mark." *Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974, 977 |
| 2 |  | (9th Cir. 2010). However, the ultimate "distinctiveness inquiry considers the |
| 3 |  | impression conveyed by the mark as a whole." *Id.* |
| 4 | 32. | Here, "Smarternutrition" is a composite mark composed of two words: "smarter" and |
| 5 |  | "nutrition." Both words are descriptive. |
| 6 | 33. | "Smarter" means more intelligent. *Smarter*, Merriam-Webster Dictionary, |
| 7 |  | https://www.merriam-webster.com/dictionary/smarter (last visited August 23, 2023). |
| 8 |  | "Smarter" is laudatory because it extols the word that it modifies. Indeed, "Smarter" |
| 9 |  | is similar to the "PLUS" mark the Second Circuit considered in *Plus Prods. v. Plus* |
| 10 |  | *Discount Foods, Inc.*, 722 F.2d 999, 1002, 1005 (2d Cir. 1983). There, the court |
| 11 |  | reasoned "[t]he term PLUS is an everyday word that indicates something added, and |
| 12 |  | when applied to goods, it merely implies additional quantity or quality." *Id.* at 1005. |
| 13 |  | Here too, "Smarter" is "an everyday word" that implies something positive about the |
| 14 |  | word that it modifies. *See id.* Therefore, "Smarter" is descriptive. |
| 15 | 34. | "Nutrition" means "the act or process of nourishing or being nourished." *Nutrition*, |
| 16 |  | Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/nutrition |
| 17 |  | (last visited August 23, 2023). Plaintiffs' product is a nutritional supplement, *i.e.*, a |
| 18 |  | product that supplements the consumer's diet with additional nutrients. "Nutrition" |
| 19 |  | thus describes what Plaintiffs' product does. Consequently, "Nutrition" is descriptive. |
| 20 | 35. | The composite term "Smarternutrition" is not greater than the sum of its descriptive |
| 21 |  | parts. When "nutrition" is appended to "smarter," "each component retains its |
| 22 |  | descriptive significance in relation to the" product. *See San Diego Credit Union v.* |
| 23 |  | *Citizens Equity First Credit Union*, 541 F. Supp. 3d 1110, 1127 (S.D. Cal. 2021) |
| 24 |  | (citing *Duopross Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1250, |
| 25 |  | 1255 (Fed. Cir. 2012)), *rev'd on other grounds*, 65 F.4th 1012 (9th Cir. 2023). The |
| 26 |  | mark is similar to the "AMERICA'S BEST POPCORN" mark that the Patent and |
| 27 |  | Trademark Office's Appeal Board found descriptive in *In re Wileswood, Inc.*, 201 |
| 28 |  |  |

1  U.S.P.Q. 400 (1978). There, the Board concluded that the mark was descriptive
2  because it simply expressed "the applicant's own praises of its products." *Id.*
3  "Smarternutrition," too, the mark puffs about Plaintiff's product.
4  36. Under the imagination test, there is little thought or imagination is required to cull
5  some direct information from the mark—that "Smarternutrition" is a better, more
6  intelligent way to nourish oneself when compared to other sources of nourishment.
7  Consequently, the imagination test supports the finding that "Smarternutrition" is
8  descriptive.
9  37. Applying the competitor test, "Smarternutrition" does not fare much better. Plaintiffs
10  chose to use "Smarternutrition" to sell their products on or before November 10,
11  2016. At that time, Defendant did not know about Defendant's use of the
12  "Smartervitamins" mark. *See* 11/30/2022, Trial Tr. 77:7-14. Thus, Plaintiffs and
13  Defendant came up with the idea to use the "Smarter" prefix in connection with the
14  sale of nutritional supplements independently and around the same time. That two
15  companies landed on similar marks without copying the other suggests use of the
16  "Smarter" prefix before a highly descriptive word is not distinctive.

        **b. "Smarternutrition" does not have secondary meaning.**

38. Determining that "Smarternutrition" is descriptive does not end the inquiry.
Descriptive marks are valid and protectable if they have acquired secondary meaning.
*Sleekcraft Boats*, 599 F.2d at 349. Secondary meaning is "the mental association by a
substantial segment of consumer and potential consumers between the alleged mark
and a single source of the product [or service]." *Levi Strauss & Co. v. Blue Bell, Inc.*,
778 F.2d 1352, 1354 (9th Cir. 1985) (en banc). "The test of secondary meaning is the
effectiveness of the effort to create it, and the chief inquiry is directed toward the
consumer's attitude about the mark in question: does it denote to him a single thing
coming from a single source?" *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434
F.2d 794, 802 (9th Cir. 1970).

39. A plaintiff may establish secondary meaning through direct or circumstantial evidence. Direct evidence, such as consumer surveys and direct consumer testimony, often provides the strongest evidence of secondary meaning. *Levi Strauss*, 778 F.2d at 1358. Circumstantial evidence that shows a mark has acquired secondary meaning includes: the exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and the number of customers, and plaintiff's established place in the market. *See Filipino Yellow Pages*, 198 F.3d at 1151.

40. A trademark holder's burden of showing secondary meaning increases with the level of descriptiveness of the mark; the more descriptive the term, the stronger the showing of secondary meaning must be. *See Filipino Yellow Pages*, 198 F.3d at 1151. The plaintiff must show that the mark achieved secondary meaning before the defendant began its allegedly infringing activities. *See Levi Strauss*, 778 F.2d at 1358; *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 826 (Fed. Cir. 1992); 5 McCarthy, *supra*, § 15:4 ("If the senior user cannot prove that its mark possessed secondary meaning at the time defendant commenced its use, there can be no infringement."); Restatement (Third) of Unfair Competition § 19 cmt. b. ("The party seeking relief is ordinarily required to establish the existence of secondary meaning at the time of the commencement of use by the other party.").

41. Here, Defendant began using their mark in commerce in October 2016. Thus, Plaintiffs must show that "Smarternutrition" acquired secondary meaning before then.

42. Plaintiffs' evidence indicates that they did not start advertising or making sales under the "Smarternutrition" label until November 2016. *See* Exs. 44-3 (paid Facebook advertising); 45-1 (Instagram advertising); 38-1 (purchase order). Indeed, by Plaintiffs' own admission at trial, Plaintiffs did not "aggressive[ly] launch" their "Smarternutrition" label until Summer 2017. 11-30-22 Trial Tr. at 109:14 –23. Plaintiffs provided no direct evidence that "Smarternutrition" achieved secondary meaning before October 2016. Therefore, "Smarternutrition" did not achieve

secondary meaning before Defendant began using their allegedly infringing mark.

43. Because "Smarternutrition" is descriptive and did not achieve secondary meaning before Defendant's allegedly infringing use began, the mark is not protectable. *See Zobmondo Entm't*, 602 F.2d at 113. Therefore, Plaintiffs' five causes of action related to its "Smarternutrition" mark fail.

### B. Plaintiffs' Claims Relating to "Smartercurcumin"

44. Plaintiffs allege two Lanham Act violations claims relating to its "Smartercurcumin" mark: (1) that Defendant's use of "Smartervitamins" constitutes unfair competition and false designation of origin in light of Plaintiffs' "Smartercurcumin" mark (15 U.S.C. § 1125(a)) and that Defendant's use of "Smartervitamins" was a false description or representation given Plaintiffs' "Smartercurcumin mark (15 U.S.C. § 1125(a). Final Pretrial Conference Order at 5-6. Plaintiffs also bring two state law claims related to its "Smartercurcumin" mark: (1) California common law trademark infringement and (2) unfair competition under Cal. Bus. & Prof. Code §17200. *Id.*

45. To prevail on all four causes of action, Plaintiffs must show that "Smartercurcumin" is a valid and protectable mark. *See Brookfield*, 174 F.3d at 1046-47, 1046 n.8 (9th Cir. 1999) (Lanham Act); *Cleary*, 30 F.3d at 1263-64 (9th Cir. 1994) (California state law claims).

#### 1. Plaintiffs' "Smartercurcumin" Mark is Not Protectable.

##### a. "Smartercurcumin" is descriptive.

46. Smartercurcumin is a supplement "containing curcumin." Ex. 6-20.
47. "Curcumin" therefore describes the product.
48. "Smarter," as described above, is descriptive, puffing term.
49. As a whole, "Smartercurcumin" is descriptive. The mark directly and immediately characteristic of the product—that the product is a more intelligent way to consume curcumin when compared to other sources of curcumin. *See supra* Part III.A.

##### b. "Smartercurcumin" does not have secondary meaning.

50. Plaintiffs must show that "Smartercurcumin" achieved secondary meaning before

13

Defendants began using "Smartervitamins" in commerce in October 2016. *See Levi Strauss*, 778 F.2d at 1358.

51. The evidence indicates that Plaintiffs did not begin marketing and selling their curcumin supplement as "Smartercurcumin" until 2017. Exs. 6-24, 42-4, 44-3, 11-30-22 Trial Tr. 139:20-140:3. Therefore, "Smartercurcumin" did not achieve secondary meaning before October 2016.

52. Because "Smartercurcumin" is a descriptive mark without secondary meaning, Plaintiff's four causes of action related to "Smartercurcumin" fail. Because Plaintiffs' causes of actions related to infringement of "Smartercurcumin" and "Smarternutrition" fail, Plaintiff is not entitled to damages, equitable remedies, or a declaratory judgment.

### C. Defendant's Counterclaims

53. Defendant brings a counterclaim that Plaintiffs' use of the "Smarternutrition," "Smartercurcumin," and "Smarter" marks on vitamin and supplement products constitutes unfair competition, a false designation of origin, and false and misleading description in violation of 15 U.S.C. § 1125(a).

54. An essential element of all of Defendant's counterclaims is that their asserted mark, "Smartervitamins," is valid and protectable. *See Brookfield*, 174 F.3d at 1046; *Two Pesos*, 505 U.S. at 769. Here, the Court concludes that, like Plaintiffs' marks, "Smartervitamins" not entitled to trademark protection.

#### 1. The Validity of Defendant's "Smartervitamins" Mark

55. Because "Smartervitamins" is not federally registered, it can obtain only common law trademark protection, which requires the mark is "(1) inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two Pesos*, 505 U.S. at 769.

##### a. "Smartervitamins" is not inherently distinctive.

56. "Smartervitamins" is not inherently distinctive because is descriptive. *See Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1162 (9th Cir. 2021) (holding that descriptive marks are not inherently distinctive). "Smarter" is a laudatory term, meaning it is descriptive. "Vitamins" describes Defendant's product: a vitamin

    supplement. Taken together, "Smartervitamins" is descriptive, because it takes no imaginative leaps to cull direct information from the mark. "Smartervitamins," in a straight-forward way, describes the product while extolling its virtue.

57. The competitor test also test strongly suggests that "Smartervitamins" is descriptive. That competitors need the language SVC seeks to protect can be inferred from the fact that competitors, without knowledge of SVC's mark, chose a similar mark as SVC. As Defendant stated in its correspondence with the USPTO in trying to register "Smartervitamins," "there are a very large number of trademarks in this field that include the term SMART." Ex. 31-23. For example, several years before Defendant began using their mark, another company registered "Smart Vitamin." *See* Ex. 31-26. Similarly, Plaintiffs in this case developed their similar mark without knowledge of Defendant's "Smartervitamins" mark. *See* Ex. 22. As a result, the competitor test supports the Court's determination that "Smartervitamins" is descriptive.

### b. "Smartervitamins" does not have secondary meaning.

58. Because "Smartervitamins" is descriptive, it is not inherently distinctive. *Kendall-Jackson Winery*, 150 F.3d at 1047. Therefore, it is protectable only if secondary meaning is shown. *Id.*

59. Plaintiff began using "Smarternutrition"—the allegedly infringing mark—in commerce on February 9, 2017. Thus, Defendant is required to show that "Smartervitamins" achieved secondary meaning before that date. *See Levi Strauss*, 778 F.2d at 1358.

60. Only three-and-a-half months elapsed between the Defendant beginning to use "SmarterVitamins" in commerce and Plaintiffs entering the market. "While not impossible, it is difficult for a product to acquire secondary meaning" in such a short period of time. *See Braun*, 975 F.2d at 826; *id.* (finding that a mark did not acquire secondary meaning in 18 months); 5 McCarthy, *supra*, § 15:54.

61. Defendant produced no direct evidence that consumers associated "Smartervitamins"

with Defendant before February 9, 2017.

62. Defendant's circumstantial evidence also does not establish that Defendant achieved secondary meaning before February 9, 2017. By that date, Defendant had sold around $2,000 worth of "Smartervitamins" branded products. Exs. 26-27. The price of each individual bottle of Smartervitamins is around $16. Ex. 34-4. Thus, if each of Defendant's customers bought only one bottle, Defendant serviced approximately 125 customers before Plaintiff began their allegedly infringing use. Even if each of those 125 customers associated "Smartervitamins" with Defendant, Defendant's sales data is insufficient to show secondary meaning, because secondary meaning requires that a "*substantial* segment" of the population associates the mark with Defendant. *See Levi Strauss*, 778 F.2d at 1354 (emphasis added); *Norm Thompson Outfitters, Inc. v. Gen. Motors Corp.*, 448 F.2d 1293, 1297 (9th Cir. 1971) (holding that if there is only a "sparseness of people" who associate the mark with plaintiff, secondary meaning is not proven). 125 customers does not constitute a "substantial segment" for purposes of secondary meaning. *Compare Arrow Fastener Co. v. Stanley Works*, 870 F.Supp. 427, 428 (D.Conn.1994), *rev'd on other grounds*, 59 F.3d 384 (2d Cir.1995) (40,000,000 staplers and over 500,000,000 boxes of staples sold led to finding of secondary meaning) *with Bernard v. Commerce Drug Co.*, 964 F.2d 1338, 1339 (2d Cir.1992) (summary judgment proper for failure to establish secondary meaning where 20,000 offers for free samples were sent out and 8,000 people responded).

63. Defendant's advertising efforts before February 2017 also did not establish secondary meaning. In 2016, Defendant spent at most $2,620 in advertising. "[T]he mere expenditure of money is not, in itself, determinative of" secondary meaning. 5 McCarthy, *supra*, § 15:51. Instead, "[t]o demonstrate secondary meaning based on advertising, the advertising must be of a 'nature and extent to create an association' with the advertiser's goods." *Art Attacks Ink, LLC v. MGA Entmnt. Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009) (quoting *Dep't of Parks and Recreation v. Bazaar Del*

*Mundo*, 448 F.3d 1118, 1128 (9th Cir. 2006)). For example, in *Art Attacks Ink*, the plaintiff advertised their protected products at county fairs, but did not show that "significant numbers of passersby would notice [the plaintiff's] booth among the many other similar booths at the fair." *Id.* at 1144. Because there was "no evidence that" the advertising "efforts were effective," the court concluded that plaintiff's advertising did not create secondary meaning. *Id.* at 1146. Here too, there is no evidence that Plaintiff's advertising efforts before February 2017 were effective. In fact, there is evidence of the opposite. Defendant's Facebook posts in February 2017 received nearly 3,000 impressions (*i.e.*, their ads popped entered 3,000 people's screens), only 26 people clicked the link contained in the ad. Ex. 78. Defendant's Instagram posts during the relevant period also did not receive significant engagement. *See, e.g.*, Ex. 72 (post from January 2017 with 148 likes); Ex. 73 (post from November 2016 with 219 likes). Thus, Defendant's relatively small advertising expenditures were not effective in establishing secondary meaning.

64. A company's exclusive use of a mark is evidence that the mark achieved secondary meaning. *See Filipino Yellow Pages*, 198 F.3d at 1151. During the relevant period, a third party had a registered trademark for "Smart Vitamin." Ex. 31. Defendant did not meet their burden to show that the "Smart Vitamin" mark owner was not using the mark in commerce. Thus, Defendant cannot show secondary meaning through their exclusive use of "Smartervitamins."

65. Finally, while actual confusion among consumers can show secondary meaning, *Art Attacks Ink*, 581 F.3d at 1147, Defendant has not identified any instances of actual confusion that occurred before February 2017. *See* Exs. 88-111 (emails showing the earliest instance of actual confusion between "Smartervitamins" and "Smarternutrition" is 2019).

66. Because "Smartervitamins" is a descriptive mark that did not achieve secondary meaning before Plaintiffs' allegedly infringing use began, it is not valid or protectable.

17

As a result, Defendant's four counterclaims fail, and Defendant is not entitled to any damages or equitable remedies.

## IV.  CONCLUSION

For the reasons explained above, the Court **HOLDS** that Plaintiffs have not met their burden to show that "Smarternutrition" is a valid and protectable trademark, meaning all five of Plaintiff's causes of action relating to Defendant's infringement of that mark fail. The Court further **HOLDS** that Plaintiffs have not met their burden to show that "Smartercurcumin" is a valid and protectable trademark, meaning that all four of Plaintiff's causes of action relating to Defendant's infringement of that mark fail. Finally, the Court **HOLDS** that Defendant has not met its burden to show that "Smartervitamins" is a valid and protectable trademark, meaning each of their counterclaims fail.

The parties shall, either simultaneously or jointly, **file proposed judgments in accordance with this Court's ruling on or before October 30, 2023.**

DATED:   October 16, 2023

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

18